IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHERN DISTRICT

| | |
|---|---|
| KIRSTIE B. COUCH, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CIVIL ACTION NUMBER ) 2:20-cv-00442-MHH |
| VON MAUR STORES, INC., | ) ) |
| Defendant. | ) |

## **MEMORANDUM OPINION**

This case arose from a trip-and-fall incident at a retail store operated by defendant Von Maur Stores, Inc. in Hoover, Alabama. The person who fell, Kirstie Couch, sued Von Maur under theories of negligence; premises liability; recklessness and wantonness; and negligent, reckless, and wanton supervision and training. Von Maur has moved for summary judgment on all counts. For the reasons discussed below, the Court grants Von Maur's motion.

## **SUMMARY JUDGMENT STANDARD**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, a district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). To demonstrate that there is a genuine dispute as to a material

fact that precludes summary judgment, a party opposing a motion for summary judgment must cite "to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." FED. R. CIV. P. 56(c)(1)(A). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). When considering a summary judgment motion, a district court must view the evidence in the record and draw reasonable inferences from the evidence in the light most favorable to the non-moving party. *Asalde v. First Class Parking Sys. LLC*, 898 F.3d 1136, 1138 (11th Cir. 2018). Accordingly, in this opinion, the Court views the evidence in the light most favorable to Ms. Couch.

## SUMMARY JUDGMENT EVIDENCE

Ms. Couch's claims against Von Maur arise out of a shopping trip to the store. Ms. Couch accompanied Lori Curry and Ms. Curry's daughter to the Von Maur store in Hoover. The group was shopping for a prom dress for Ms. Curry's daughter. (Doc. 12-1, p. 8, tpp. 23-24). The women arrived at the store mid-morning and spent nearly two hours in the prom-dress section of the juniors' department. (Doc. 12-1, pp. 8-9, tpp. 24, 26). The store was not crowded and was well-lit. (Doc. 12-1, pp. 10, 15, tpp. 30, 52-53). Throughout the store, Von Maur displayed dresses and other

2

garments on "T-Stands" – which are wheeled clothing racks.  (Doc. 12-1, pp. 11-12, tpp. 36-38).  Ms. Couch had seen T-Stands like Von Maur's before at other stores.  (Doc. 12-1, p. 15, tp. 53).[1]

After Ms. Curry's daughter selected a dress, the three women walked from the prom dress section toward the register.  They walked through an area flanked by several T-Stands and a jewelry stand.  (Doc 12-1, p. 13, tpp. 43-44).  Ms. Couch was in the back of the group carrying a dress over her arm that was still on its hanger.  (Doc. 12-1, pp. 13-15, tpp. 44, 49-50).  Ms. Couch had walked through this area of the store earlier in the visit and described it as "very tight," but not so tight that people could not walk through. (Doc. 12-1, pp. 11-12, tpp. 36, 41).  Ms. Curry and her daughter made it through this area without an issue, but Ms. Couch tripped, fell, and sustained injuries to her hand and foot.  (Doc. 12-1, pp. 13-14, tpp. 43, 46; Doc. 12-1, p. 36).[2]

Because one of the wheels stuck out from the T-Stand after her fall and there was nothing else in the immediate area, Ms. Couch concluded that the wheel caused her fall.  (Doc. 12-1, pp. 12, 15, tpp. 39-40, 51).  She cannot recall if the wheel was turned into the aisle.  (Doc. 12-1, pp. 22, 25, tpp. 80-81, 90).  Von Maur displayed

---

[1] Doc. 12-1, page 38 contains two photographs of T-Stands.

[2] In her written discovery responses, Mr. Couch disclosed $7,236.00 in medical expenses that she attributes to her fall.  (Doc. 12-1, pp. 43-44, no. 6).  Ms. Couch believes she missed one week of work because of her accident, (Doc. 12-1, p. 51, no. 23(c)), but she does not claim lost wages, (Doc. 12-1, p. 51, no. 23).

dresses on that particular T-Stand, but Ms. Couch could still see the wheels. (Doc. 12-1, p. 15, tp. 51). The T-Stand itself was not in the aisle, nor were there articles of clothing on the floor where Ms. Couch fell. (Doc. 12-1, p. 12, tp. 39). Other than Ms. Curry and her daughter, no one else was in the area when Ms. Couch fell. (Doc. 12-1, p. 16, tp. 55). Ultimately, the Von Maur store manager listed the wheel as the cause of the fall in the Von Maur Customer Accident Narrative form. (Doc 19-1, p. 36).[3]

When Ms. Couch fell, a Von Maur employee came over to see what had happened. (Doc. 12-1, p. 14, tp. 46). With help, Ms. Couch got to her feet and sat in a chair while the Currys went to the register to buy the prom dress. (Doc. 12-1, p. 14, tp. 46). Afterwards, the Currys took Ms. Couch to the emergency room for treatment. (Doc. 12-1, p. 14, tp. 46).

Other than this incident, Von Maur has no knowledge of a customer claiming to have been injured by a clothing rack or clothing rack wheel at the Hoover location. (Doc. 12-2, p. 3, ¶¶ 8-9).

## ANALYSIS

Von Maur seeks summary judgment on all four counts in Ms. Couch's complaint, but Ms. Couch responded only to Von Maur's arguments concerning her claims for negligence and premises liability. (Doc. 19, p. 3-6). Von Maur is entitled

---

[3] Von Maur contests that the wheel caused Ms. Couch's fall.

to summary judgment on the uncontested counts: wantonness and negligent, reckless, and wanton supervision and training. In its initial summary judgment brief, Von Maur demonstrated that Ms. Couch has not developed evidence to support those two counts. (Doc. 16, pp. 15-20). The burden then shifted to Ms. Couch to demonstrate the existence of a genuine issue of material fact to be resolved by a factfinder. *See Clark v. Coats & Clark, Inc.,* 929 F.2d 604 (11th Cir. 1991). She failed to do so. Therefore, Von Maur is entitled to judgment in its favor on Ms. Couch's wantonness and negligent supervision and training claims.

The remaining two counts – negligence and premises liability – operate hand-in-hand. *See Lilya v. Greater Gulf State Fair, Inc.*, 855 So. 2d 1049, 1054 (Ala. 2003) (applying premises liability principles to the duty element of plaintiff's negligence claim because the defendant's allegedly wrongful conduct was tied to its responsibilities as landowner). Under Alabama law, a plaintiff who brings a premises liability claim must establish "duty, breach of duty, cause in fact, proximate or legal cause, and damages." *Ex parte Harold L. Martin Distrib. Co., Inc.*, 769 So. 2d 313, 314 (Ala. 2000) (internal quotation omitted). "[T]he duty owed an injured person in a premises-liability case depends on the legal status of the person when the injury occurred, i.e., whether the person injured was a trespasser, a licensee, or an invitee." *Unger v. Wal-Mart Stores, East L.P.*, 279 So. 3d 546 (Ala. 2018) (citation omitted).

Ms. Couch was an invitee when she fell. *See Ex parte Mountain Top Indoor Flea Market, Inc.*, 699 So.2d 158, 161 (Ala.1997) ("In order to be considered an invitee, the plaintiff must have been on the premises for some purpose that materially or commercially benefited the owner or occupier of the premises.") (internal quotation marks omitted). Premises owners are not insurers of the safety of invitees who step onto their property; "[t]here is no presumption of negligence which arises from the mere fact of an injury to an invitee." *Tice v. Tice*, 361 So. 2d 1051, 1052 (Ala. 1978); *accord Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d at 317. Rather, a premises owner "owes an invitee the duty to keep the premises in a reasonably safe condition and, if the premises are unsafe, to warn of hidden defects and dangers that are known to the landowner but that are hidden or unknown to the invitee." *Galaxy Cable, Inc. v. Davis*, 58 So. 3d 93, 98 (Ala. 2010).

A premises owner's duty to the invitee is limited in several ways. First, a premises owner does not have a duty to protect invitees from all conceivable dangers – only those of which the premises owner has "superior knowledge." *Ex parte Harold L. Martin Distrib. Co.*, 769 So. 2d at 314. "The entire basis of an invitor's liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *Sessions v. Nonnenmann*, 842 So. 2d 649, 652 (Ala. 2002). Second, and relatedly, "[t]he owner of a premises has no duty to warn an

invitee of open and obvious [hazards] which the invitee is aware of, or should be aware of, in the exercise of reasonable care on the invitee's part." *Dolgencorp, Inc. v. Taylor*, 28 So. 3d 737, 742 (Ala. 2009) (internal quotation omitted). "'A condition is 'open and obvious' when it is known to the [plaintiff] or should have been observed by the plaintiff in the exercise of reasonable care.'" *Dennis v. Wiley*, 314 So. 3d 1213, 1225 (Ala. 2020) (quoting *Denmark v. Mercantile Stores Co.*, 844 So. 2d 1189, 1194 (Ala. 2002)). To prevail on a motion for summary judgment, a premises owner does not have to show that the plaintiff consciously appreciated the danger at the time of the accident. *Sessions*, 842 So. 2d at 653.

Ms. Couch has not demonstrated that Von Maur had or reasonably should have had superior knowledge of the danger posed by the wheel on the T-Stand, nor has she rebutted the argument that the wheel was an open and obvious danger. There is no evidence that Von Maur had knowledge of a prior safety issue relating to T-Stands. (Doc. 12-2, p. 3). There also is no evidence in the record that a Von Maur employee saw the T-Stand wheel sticking into the walkway before Ms. Couch fell. Ms. Couch testified that she was familiar with T-Stands and had seen them before at other stores. (Doc. 12-1, p. 15, tpp. 51, 53). She walked the area containing the T-Stands – including the particular walkway where she fell – for almost two hours. (Doc. 12-1, pp. 8-9, tpp. 24, 26). And even though garments hung from the T-Stand that caused her fall, Ms. Couch could see the wheel. (Doc. 12-1, p. 15, tp. 51).

Moreover, under *Sessions*, whether Ms. Couch consciously appreciated the danger when she walked by the T-Stand is irrelevant. *Sessions*, 842 So. 2d at 653-54. No fact points to Von Maur having the "superior knowledge" required by Alabama law to impose on Von Maur a heightened duty to Ms. Couch regarding the wheel on the T-Stand.

The wheel on the T-Stand was not a hidden danger, trap, snare, or pitfall unobservable to Ms. Couch in the exercise of reasonable care. *See Lamson & Sessions Bolt Co. v. McCarty*, 173 So. 388, 391 (Ala. 1937).[4] In other words, the danger posed by the wheel – tripping and falling – was open and obvious. Ms. Couch had seen T-Stands before and could tell that they were on wheels. She testified that she could see the wheel that caused her to fall; it was not hidden by garments or anything else. (Doc. 12-1, p. 15, tp. 51). A person exercising reasonable care would have seen the wheel and avoided it – as Ms. Curry and her daughter had – especially having seen these types of clothing racks before.

The authority Ms. Couch cites in her brief opposing summary judgment is inapposite. Ms. Couch analogizes her case to four premises-liability decisions: *Mills v. Brunos, Inc.*, 641 So. 2d 777 (Ala. 1994); *Horne v. Gregerson's Foods, Inc.*, 849 So. 2d 173 (Ala. Civ. App. 2002); *Norris v. Wal-Mart Stores, Inc.*, 628 So. 2d

---

[4] The Alabama Supreme Court cited *Lawson* with approval in *Daniels v. Wiley,* 314 So. 3d 1213, 1224 (Ala. 2020).

475 (Ala. 1993); and *Mims v. Jack's Restaurant*, 565 So. 2d 609 (Ala. 1990). In *Mills*, the plaintiff sued a supermarket after he slipped and fell in oil. *Mills*, 641 So. 2d at 779. The trial court granted summary judgment for the supermarket. *Mills*, 641 So. 2d at 778. The Alabama Supreme Court reversed, holding that "a jury could reasonably infer either that [an] employee was responsible for the spill or … knew of the spill" because the record contained evidence that an employee was stocking shelves in the area when the plaintiff slipped. *Mills*, 641 So. 2d at 779. Accordingly, the supermarket did not make a *prima facie* showing that there was no genuine issue of material fact, and the burden never shifted to Mills. *Mills*, 641 So. 2d at 779.

The facts here are distinguishable. The record contains no evidence that a Von Maur employee was in the immediate area at or near the time of Ms. Couch's fall or had responsibility for or knowledge of the positioning of the T-Stand wheel. (Doc. 12-1, p. 16, tp. 55). Additionally, the record contains undisputed evidence that this Von Maur store had not received a complaint from a customer about an issue with the wheels on T-Stands. (Doc. 12-2, p. 3). The potential superior knowledge possessed by the nearby supermarket employee in *Mills* that generated a question of fact is absent here. Without that, *Mills* does not apply.

*Horne v. Gregerson's Foods, Inc.* also does not apply. The *Horne* plaintiffs, a married couple, sued a supermarket after one of them slipped and fell in a water puddle. *Horne*, 849 So. 2d at 173. As in *Mills*, the trial court granted summary

judgment for the supermarket. *Horne*, 849 So. 2d at 173. The Alabama Court of Civil Appeals reversed, finding that there was a genuine issue of material fact as to the store's notice of the puddle. *Horne*, 849 So. 2d at 175. The record contained evidence that one of the supermarket's employees created the puddle as he packed produce bins with ice. *Horne*, 849 So. 2d at 175. Therefore, because the store "failed to present any evidence indicating that the water on the floor was not caused by its own employee…. the burden never shifted to the [plaintiff] to present evidence to create a genuine issue of material fact…." *Horne*, 849 So. 2d at 175. The record here contains no evidence akin to the supermarket employee's handling of ice near the area of the plaintiff's water-induced fall in *Horne*. Thus, notice cannot be attributed to Von Maur through circumstantial evidence as was the case in *Horne*.

*Norris v. Wal-Mart Stores, Inc.* also is distinguishable because the defendant in that case decided to take precautionary measures in some areas of the store but not in others. *Norris*, 628 So. 2d at 477. The difference in precautions, the Alabama Supreme Court decided, created a jury question concerning breach of duty. *Norris*, 628 So. 2d at 478. The *Norris* plaintiff was injured when a ten-pound box of toothpaste fell from a shelf at Wal-Mart. *Norris*, 628 So. 2d at 477. The shelf that held the toothpaste box was not secured by a protective railing, even though many other shelves throughout the store had railings. *Norris*, 628 So. 2d at 477. The Alabama Supreme Court held that "[s]helves with railings were otherwise identical

to the ones without railings. Whether railings were installed apparently depended upon what was stored on the shelves. A fact question was presented as to whether Wal–Mart breached its duty … by storing cases of toothpaste on high shelves … without providing a railing to keep a heavy box from falling onto a customer." *Norris*, 628 So. 2d at 477-78 (analogizing to *Furgerson v. Dresser Industries, Inc.*, 438 So.2d 732 (Ala.1983), in which the Alabama Supreme Court held that a question of fact existed because a gas station operator had safety features on two of its pumps but not on a third which injured the plaintiff). The record here contains no evidence that Von Maur took precautionary measures with some of the T-Stand wheels but not others. That fact served as the underpinning of the Alabama Supreme Court's analysis in *Norris*, and that precludes *Norris*'s application here.

Notably, the dangers present in *Norris* and in this case are distinct. In *Norris*, boxes stored on the top shelf of a six-foot-tall shopping display posed a danger to customers. *Norris*, 628 So. 2d at 477. A box fell and hit the plaintiff when she bent to get an item on a lower shelf. *Norris*, 628 So. 2d at 477. Under the circumstances, the plaintiff could not avoid the falling box. The danger was not open and obvious to the plaintiff. In contrast, the danger Ms. Couch confronted was visible and avoidable in the exercise of reasonable care. Ms. Couch testified that she could see the wheel. She had walked throughout the area around the spot of her fall for a

period of almost two hours. Ms. Couch just overlooked the wheel when she tripped on it. Her accident and that of the plaintiff in *Norris* are dissimilar.

Finally, to identify a jury question, Ms. Couch tries to analogize her case to *Mims v. Jack's Restaurant*. As Ms. Couch points out, the *Mims* Court held:

> [I]n cases where the alleged *defect* is a part of the premises … once a plaintiff has made a prima facie showing that a *defect* in a part of the premises has caused an injury, then the question whether the defendant had actual or constructive notice of the defect will go to the jury, regardless of whether the plaintiff makes a prima facie showing that the defendant had or should have had notice of the defect at the time of the accident.

*Mims*, 565 So. 2d at 610 (emphasis added). Ms. Couch reasons that because she demonstrated her injury was caused by a wheel on the T-Stand that was part of Von Maur's premises, a jury must resolve the question of Von Maur's notice of the danger posed by the wheel. The Court disagrees.

In *Mims*, the plaintiff demonstrated that she tripped over a doorway threshold that was raised because of loose and missing screws. *Mims*, 565 So. 2d at 610. She did not merely trip over the threshold as designed. The T-Stand over which Ms. Couch tripped was not affixed to Von Maur's premises, and Ms. Couch has presented no evidence that suggests that the T-Stand wheel had screws loose, was loose from the T-Stand itself, was detached from the T-Stand, or had any other possible structural problem. Without evidence of a defect in the premises or the T-Stand itself, there is no *Mims* question of notice for the jury to resolve.

Ms. Couch's fall was an unfortunate accident.  Under Alabama law, "[n]ot every accident that occurs gives rise to a cause of action upon which the party injured may recover…. Often no one is to blame, not even the ones who are injured." *Lowes Home Centers, Inc. v. Laxson*, 655 So. 2d 943, 946 (Ala. 1994).

## CONCLUSION

For the reasons discussed, the Court grants Von Maur's summary judgment motion.  By separate order, the Court will enter judgment for Von Maur on all of Ms. Couch's claims.

**DONE** and **ORDERED** this September 21, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE